UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PENNY HAYS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>                    Defendant. | NO:  2:16-CV-0080-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 14, 15).  Cory J. Brandt represents Plaintiff Penny Hays. Daphne Banay represents Defendant Carolyn W. Colvin, Acting Commissioner of Social Security Administration.  The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.*  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account of an error

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish

that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for a period of disability and disability insurance benefits on June 7, 2012. Trs. 11, 126-127. Her application was denied initially and on reconsideration. Trs. 11, 92-94, 96-97. Plaintiff filed a timely request for hearing, Tr. 98-99, and appeared with an attorney at a hearing before an administrative law judge ("ALJ") on September 10, 2014. Trs. 11, 29-62.

At step one, on October 24, 2014, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2008, the alleged onset date. Tr. 13. At step two, however, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that "significantly limited the ability to perform basic work related activities for 12 consecutive months." Tr. 13. On October 7, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-7), rendering the ALJ's decision the final decision that is subject to judicial review. 20 C.F.R. § 404.981.

//

//

//

**ISSUES**

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  The Court has identified three issues for its review:

1. Whether the ALJ erred in rejecting Plaintiff's medical impairments as groundless;

2. Whether the ALJ erred in limiting the weight of the opinions of Plaintiff's treating and examining medical providers; and

3. Whether the ALJ erred in rejecting Plaintiff's subjective complaints.

ECF No. 14 at 6.  The Court evaluates each issue in turn.

**DISCUSSION**

**A. Step Two Analysis**

Plaintiff asserts that the ALJ found that she had the following medically determinable impairments: restless leg syndrome and bipolar I disorder.[1]  Tr. 13.  Plaintiff argues that the ALJ erred in concluding at step two that neither

---

[1]    Plaintiff's summary judgment motion focuses solely on her bipolar I disorder, not her restless leg syndrome ("RLS").  ECF No. 14.  Thus, the Court assumes that Plaintiff is not challenging the ALJ's finding with respect to her RLS.  Tr. 23.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

impairment caused more than a slight abnormality in her work-related abilities, and that the ALJ's findings are not supported by substantial evidence.  ECF No. 14 at 2, 8; Tr. 13.  Defendant contends that the ALJ properly evaluated the severity of these impairments and that Plaintiff has failed to show that the ALJ erred at step two.  ECF No. 15 at 4.

A step two finding of a severe impairment does not itself result in a finding of disability.  Rather, step two merely screens out groundless claims.  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)).  A claimant bears the burden at step two to demonstrate that she has medically determinable physical impairments which (1) have lasted or are expected to last for a continuous twelve-month period and (2) significantly limits her ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509.  An impairment does not limit an ability to do basic work activities where it *"would have no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in original) (quoting SSR 85-28).

Plaintiff suggests that an ALJ cannot dismiss a claim at step two *unless* he determines that it is "groundless."  ECF No. 14 at 8.  This interpretation would put the burden at step two on the Commissioner to show that an impairment is not significant.   However, the regulations and case law squarely place the burden at

step two on the claimant to make a prima facie showing that her impairments more than minimally affect her work abilities and have persisted or will continue to persist for a year.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509; *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The ALJ concluded that Plaintiff failed to meet this burden regarding her claimed limitations attributed to her restless leg syndrome and bipolar I disorder.  Tr. 13.

In determining the severity of mental functional limitations at step two, the ALJ must consider the claimants: (1) daily activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404, subpt. P, app. 1, 12.00(C); SSR 96–8p, 1996 WL 374184 (July 2, 1996) ("Paragraph C" limitations "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  If the ALJ concludes that the limitation is "mild" or "none" in the first three functional areas and "none" in the fourth area, a finding that the impairment is not severe is appropriate, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1); *see also Fisher v. Astrue,* 788 F.Supp.2d 1219, 1229–30 (E.D. Wash. 2011).  In evaluating daily activities for mental impairments, the ALJ must "assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability."  20 C.F.R. § 404, subpt. P, app. 1, 12.00(C)(1).

1    If there is substantial evidence to support the ALJ's findings, or if there is

2    conflicting evidence that will support a finding of either a disability or a

3    nondisability, the ALJ's finding is conclusively established.  *Sprague v. Bowen,*

4    812 F.2d 1226, 1229–30 (9th Cir. 1987).

5         Here, the ALJ concluded that "the objective evidence does not document

6    clinical findings of physical or mental status abnormality that establish total

7    disability . . . or that corroborate the degree of symptomology and limitation" that

8    Plaintiff described.  Tr. 21.  The ALJ found that Plaintiff's own statements about

9    her daily activities "are not limited to the extent one would expect, given the

10   complaints of disabling symptoms and limitations."  Tr. 22.

11        Specifically, in considering Plaintiff's testimony regarding her daily living,

12   the ALJ found that Plaintiff only had a mild limitation in daily living activities

13   given that Plaintiff reported that "on an average day she paints on canvas, draws,

14   plays the ukulele, or gets on Facebook.  Sometimes she will jump on her mini

15   trampoline or watch movies with her husband. She prepares easy meals that do not

16   take a lot of preparation.  She spends about 2 to 4 hours doing EFT tapping for a

17   Get Slim program.  She and her husband spend about 1 to 2 hours shopping

18   together."  Tr. 22.  The ALJ also cited several sections of the record demonstrating

19   that Plaintiff reads about an hour a day, is able to go out alone, drive a car, and that

20   "everything seems to be fine except her husband does the money management."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

Trs. 14, 16, 19.  The ALJ also noted that Plaintiff reported she does her own laundry and some dishes.  Tr. 14.  At one point, Plaintiff was a "representative for 'passion parties' which [she] reported to be going very well" and took "an 8 week course on building her business."  Tr. 22.

Plaintiff disagrees with the ALJ's characterization of her daily activity abilities, despite that much of the evidence considered by the ALJ was derived from Plaintiff's self-reporting.  ECF No. 14 at 18-19.  Nevertheless, as long as an ALJ's interpretation of a claimant's daily activities is "rational," the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.").

In evaluating the social functioning of a claimant, an ALJ evaluates a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  20 C.F.R. § 404, subpt. P, app. 1, 12.00(C)(2).  Here, the ALJ concluded that Plaintiff was mildly limited in her social functioning as "[s]he was working part time, 20 hours per week during some

1    of the time.  She has a supportive marriage of 20 some odd years.  She has friends

2    and there has been some traveling for vacations."  Tr. 19.

3        Finally, in evaluating a claimant's concentration, persistence, or pace, an

4    ALJ must evaluate the claimant's "ability to sustain focused attention and

5    concentration sufficiently long to permit the timely and appropriate completion of

6    tasks commonly found in work settings."  20 C.F.R. § 404, subpt. P, app. 1,

7    12.00(C)(3).  In this respect, the ALJ concluded that Plaintiff had no limitation;

8    rather, the ALJ found that "[t]his is an area of strength" for Plaintiff and that

9    Plaintiff "basically aced the mental status exam."  Trs. 19-20.

10       The Court finds that the ALJ relied on substantial evidence to support his

11   finding at step two that Plaintiff did not suffer from a severe impairment or

12   combination of impairments in concluding that she was not disabled.

13   **B. Medical Opinions**

14       Plaintiff also faults the ALJ for "improperly rejecting" the opinions of her

15   treatment providers.  ECF No. 14 at 10.  Specifically, Plaintiff offers the following

16   arguments: (1) the ALJ, in rejecting the opinion of Valerie Kolokoff, M.D.,

17   FAAFP, erred in rejecting the opinion as unsupported and inconsistent with the

18   overall record, *id.* at 11-12; (2) the ALJ, in rejecting the opinion of Manya D.

19   Dobaj, ARNP, erred in rejecting the opinion asserting that it was inconsistent with

20   her chart notes and because she discussed finding work with Plaintiff, *id.* at 12; and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

(3) the ALJ improperly rejected the opinion of Catherine A. MacLennan, Ph.D.

finding that her mental status exam findings were normal and her opinion was

based on Plaintiff's subjective reports, *id.* at 14-15.  The ALJ, however, did not

reject Dr. Kolokoff's, Dr. MacLennan's, and Nurse Dobaj's opinions entirely, but

instead gave each "little weight" relative to other evidence in the record.  Tr. 23.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.*  In addition, the regulations give more weight to

opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists.

*Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

(citation omitted).  "However, the ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes*, 881 F.2d at 755 (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### 1. Valerie Kolokoff, M.D., FAAFP

The Court finds that the ALJ properly afforded "little weight" to the opinion of Valerie Kolokoff, M.D., FAAFP.  As Plaintiff concedes, ECF No. 14 at 10, the ALJ need only have provided "specific and legitimate" reasoning supported by substantial evidence for rejecting Dr. Kolokoff's opinion regarding Plaintiff's mental functioning.  *See Bayliss*, 427 F.3d at 1216. The Court finds that the ALJ provided specific and legitimate reasons for affording Dr. Kolokoff's opinion only "little weight."  Tr. 23.

Dr. Kolokoff, Plaintiff's treating physician, completed a medical report indicating that she has been providing Plaintiff with ongoing primary care from 1999 through May 13, 2014.  Trs. 17, 402-404.  Although Dr. Kolokoff characterized Plaintiff's prognosis as "fair," she also opined that Plaintiff "is unable to work on a continuous basis due to *unstable* bipolar disorder not in remission."  *Id.* (emphasis added).  Dr. Kolokoff reported that even if Plaintiff worked a 40-hour week, it is more probable than not that she would miss four or more days per month.  *Id.*  Finally, Dr. Kolokoff also opined that Plaintiff would be able to perform sedentary or light work if her disorder is in remission.  *Id.*

1    The ALJ credited little weight to Dr. Kolokoff's opinion because it was

2 inconsistent with her own examination treatment notes wherein she described

3 Plaintiff "as pleasant who appears well and in no distress." Tr. 23; *see* Trs. 331-

4 353.  Plaintiff disagrees and details evidence in support of her position.  ECF No.

5 14 at 11. However, the treatment records cited by Plaintiff do not provide the

6 necessary support for her argument because the cited records do not include Dr.

7 Kolokoff's examination treatment notes, which the ALJ explicitly relied on in

8 limiting Dr. Kolokoff's opinion.  *Compare* ECF No. 14 at 11, *with* Tr. 23 and Trs.

9 331-353.  Nevertheless, the ALJ also concluded that Dr. Kolokoff's opinion

10 contradicts counseling progress notes that consistently describe Plaintiff's "mood

11 as stable and controlled with medication."  Tr. 23; *see* Trs. 297-330, 369-398.

12    The Court finds that the ALJ provided sufficient reasoning for giving Dr.

13 Kolokoff's opinion little weight because contradictions between a physician's

14 treatment notes and her ultimate conclusion is a legitimate, clear and convincing

15 reason for limiting a physician's opinion.  *Bayliss,* 427 F.3d at 1216; *see also*

16 *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted

17 with conflicting medical opinions, an ALJ need not accept a treating physician's

18 opinion that is conclusory and brief and unsupported by clinical findings.").

19 Therefore, the Court finds that the ALJ did not err in limiting the weight of

20 Dr. Kolokoff's opinion.

### 2.  Manya D. Dobaj, ARNP

Plaintiff also faults the ALJ for rejecting the opinion of Manya D. Dobaj, ARNP, a registered nurse who has treated Plaintiff since 2008.  ECF No. 14 at 12; Tr. 16.  The ALJ gave "little weight" to Nurse Dobaj's opinion, finding that her opinion is not supported by the record as a whole for two reasons.  Tr. 23.  First, the ALJ found that Nurse Dobaj's opinion is "inconsistent with the far less severe symptoms documented in her contemporaneous chart notes" which consistently indicate that Plaintiff is doing well and her mood is stable.  *Id.* (citing Trs. 370, 372, 380, 382, 385, 395, 398).  Second, the ALJ noted that Nurse Dobaj's opinion about Plaintiff's inability to work is controverted by her own treatment notes wherein Nurse Dobaj discussed finding work with Plaintiff.  Tr. 23.  In other words, the ALJ concluded that because Nurse Dobaj consulted with Plaintiff about finding work, those discussions plainly "indicat[e] that she *is* capable of work."  *Id.* (emphasis added).

Plaintiff argues that the record does not show Plaintiff was consistently doing well or that her mental disorder was under control.  ECF No. 14 at 12.  In support, Plaintiff provides excerpts from the record evincing Plaintiff's struggles.  *Id.* at 12-13.  Plaintiff concedes, however, that there is some evidence indicating Plaintiff's stability, but avers that Plaintiff's symptoms were never eliminated.  *Id.* To that end, Plaintiff references an instance where Plaintiff was terminated because

1   *"she was not 'a good fit.'"  Id.* at 13 (emphasis added).  Plaintiff misinterprets the

2   record; rather, the ALJ observed Plaintiff testify that she was required to have

3   working internet in order to maintain her previous job "or they would have to find

4   somebody else."  *See* Tr. 15; Tr. 381 ("She was also having problems with reliable

5   internet and was told if she can't get reliable internet they would have to find

6   someone else. The owner called her and let her go because it wasn't a 'good fit.'")

7   (emphasis added).  In other words, Plaintiff intimates that her termination was due

8   to her mental condition and inability to "cope with pressures of the job," but the

9   record supports that a lack of adequate internet was the basis for her termination.

10  *Id.*; *see also* Tr. 371 (treatment notes stating that Plaintiff quit a different job

11  "because they were poorly staffed and she didn't like her female boss who is very

12  negative.").

13         Next, Plaintiff argues that the ALJ erred in finding that Nurse Dobaj's

14  discussions with Plaintiff about finding work refute Nurse Dobaj's opinion that

15  Plaintiff is not capable of full time work.[2]  ECF No. 14 at 13-14.  Indeed, in

16  _____

17  [2]     Plaintiff also argues that her attempts to find work and failed work attempts

18  do not demonstrate that she can sustain full time work.  *Id.*  Because the ALJ did

19  not premise his conclusions on this unsupported theory, the Court declines to

20  address it here.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

limiting the weight of Nurse Dobaj's opinion, the ALJ found that Nurse Dobaj's treatment notes reveal discussions with Plaintiff about finding work. Tr. 23; *see also* Tr. 382 (treatment notes stating that Nurse Dobaj "discussed [with Plaintiff] finding a job that will not incite her depression and anxiety").

In reviewing the record as a whole, and weighing evidence in support of and against the ALJ's conclusion, the Court finds that the ALJ proffered legitimate clear and convincing reasons supported by substantial evidence in limiting Nurse Dobaj's opinion. *See Bayliss,* 427 F.3d at 1216; *Magallanes*, 881 F.2d at 750 (citation omitted) (stating that where there is "more than one rational interpretation," courts are required to uphold an ALJ's decision). Moreover, Nurse Dobaj's own treatment notes consistently report that Plaintiff is stable and doing well, and show that she discussed finding work with Plaintiff. Accordingly, the Court concludes that the ALJ provided germane reasons for giving little weight to Nurse Dobaj's opinion and, therefore, the Court does not find error.

### 3.  Catherine A. MacLennan, Ph.D.

Finally, Plaintiff argues that the ALJ improperly discredited the opinion of examining provider Catherine A. MacLennan, Ph.D., who conducted a psychological consultative examination on January 7, 2013, noting that Plaintiff is able to persist through a part time workday, but a full time workday would likely over stress and destabilize her. Trs. 18, 23, 356-361; *see also* ECF No. 14 at 14.

1    Plaintiff's argues that the ALJ rejected Dr. MacLennan's opinion for two reasons:

2    (1) Dr. MacLennan's mental status exam findings were normal; and (2) Dr.

3    MacLennan relied on Plaintiff's subjective reports.  ECF No. 14 at 14; *see also* Tr.

4    19-23.

5        Plaintiff first faults the ALJ for limiting Dr. MacLennan's opinion based on

6    Plaintiff's normal mental status exam findings, contending that the exam

7    "measures little more than orientation to time and place and is not meant to

8    identify all limitations associated with bipolar [sic] disorder." *Id.*  Plaintiff cites no

9    authority in support of her argument.

10        The ALJ noted that Dr. MacLennan "found [Plaintiff] to be cooperative and

11   pleasant with an upbeat and pleasant affect" and that Plaintiff's "mental status

12   examination was well within normal limits."  Tr. 23.  The ALJ also noted that Dr.

13   MacLennan's opinion that Plaintiff "has no difficulty with sustained concentration,

14   pace and persistence and she is able to sustain focused attention long enough to

15   ensure the timely completion of tasks."  *Id.*  In addition, the ALJ relied on the

16   opinion of testifying psychologist, Nancy Winfrey, Ph.D., an impartial

17   psychologist medical expert, who opinioned that Plaintiff "basically aced the

18   mental status exam" conducted by Dr. MacLennan and determined based on those

19   results, among other things, that Plaintiff is capable of performing full time work.

20   *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1    Plaintiff next argues that the ALJ should not have limited Dr. MacLennan's

2    opinion based, in part, on Dr. MacLennan's reliance on Plaintiff's subjective

3    testimony.  ECF No. 14 at 14-15.  Plaintiff argues that the ALJ did not–and was

4    required to–explain how he reached his conclusions in that regard.  *Id.* at 15.

5    However, the Court finds that the ALJ did explain how he arrived at his decision

6    and, therefore, rejects this argument as well.

7        First, the ALJ reasoned that "Dr. MacLennan apparently relied quite heavily

8    on the subjective report of symptoms and limitations provided by [Plaintiff], and

9    seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported as

10   she only had the [Plaintiff's] initial assessment report dated October 28, 2008 and

11   treatment notes dated November 28, 2012."  Tr. 23; *see also* Trs. 356-361.  As a

12   result, the ALJ limited the weight of Dr. MacLennan's opinion as it was largely

13   based on Plaintiff's subjective reporting and because Dr. MacLennan did not form

14   her opinion based on a complete record.

15       Instead, the ALJ assigned greater weight to Dr. Winfrey's opinion.  *Id.*  The

16   ALJ articulated that Dr. Winfrey was able to review Plaintiff's record as a whole,

17   as opposed to Dr. MacLennan's limited reliance on an initial assessment report

18   dated 2008, and treatment notes dated November 28, 2012, coupled with Plaintiff's

19   self-reporting.  *Id.*  At Plaintiff's hearing, the ALJ called Dr. Winfrey to testify.

20   Trs. 19-20, 29-62.  Dr. Winfrey examined Plaintiff's medical records in toto

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    (including the mental status examination conducted by Dr. MacLennan) and

2    rendered an opinion regarding Plaintiff's ability to work that significantly differed

3    from the opinion given by Dr. MacLennan.  *Id.*  Acknowledging that bipolar I is

4    "generally a severe diagnosis," Dr. Winfrey opinioned that Plaintiff "seems well

5    managed with treatment."  *Id.*  Dr. Winfrey concluded that Plaintiff "is capable of

6    performing full time work especially since she aced the mental status examination .

7    . . and [given] the global assessment of functioning score is 58 to 59.  Tr. 20.

8            It is well settled that the ALJ may discount an opinion that is unsupported by

9    the record as a whole or by clinical findings, *Batson v. Comm'r of the Soc. Sec.*

10   *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating

11   physicians' opinions that are conclusory, brief, and unsupported by the record as a

12   whole . . . or by objective medical findings.").  Moreover, the Ninth Circuit has

13   consistently upheld an ALJ's rejection of a treating or an examining physician's

14   opinion "based *in part* on the testimony of a nontreating, nonexamining medical

15   advisor."  *See, e.g., Magallanes,* 881 F.2d at 751–55 (noting that the ALJ is

16   responsible for considering a nontreating, nonexamining medical advisor's opinion

17   in comparison with other conflicting evidence and opinion testimony to reach a

18   conclusion); *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995) (stating that

19   because "results of psychological testing conducted by the examining psychologist

20   were suspect . . . [it properly] contributed to the ALJ's findings"); *Roberts v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1   *Shalala,* 66 F.3d 179, 184 (9th Cir. 1995).  In *Roberts,* for example, the ALJ's

2   decision to reject an examining physician's opinion in favor of adopting a medical

3   expert's testimony was due to a discrepancy in medical test scores that conflicted

4   with the examining physician's opinion.  *Roberts*, 66 F.3d at 184.

5       In the present case, the ALJ pointed to specific evidence, in addition to his

6   observations, Dr. MacLennan's reliance on Plaintiff's subjective reports, and the

7   opinion of nontreating, nonexamining medical advisor, Dr. Winfrey, to support his

8   decision to give little weight to Dr. MacLennan's opinion.  As in *Roberts,* the ALJ

9   cited testimony from Dr. Winfrey that conflicted with Dr. MacLennan's opinion

10  and mental status examination results. Given that the ALJ is charged with

11  resolving conflicts or ambiguities in medical testimony, and based on the ALJ's

12  legitimate clear and convincing reasons supported by substantial evidence, the

13  Court finds that the ALJ did not err.

14  **C. Plaintiff's Subjective Complaints**

15      Plaintiff contends that the ALJ improperly rejected her subjective complaints

16  and failed to provide clear and convincing reasons for making a negative

17  credibility finding.  ECF No. 14 at 16-17.  Specifically, Plaintiff asserts that the

18  ALJ rejected her testimony "with vague assertions" of inconsistency, indicated a

19  motivation for secondary gain, and stated that her daily activities were not as

20  limited as expected.  ECF No. 14 at 17; Tr. 21-22.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

In social security proceedings, a claimant must prove the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 404.1508, 404.1527. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 404.1527. Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* at 345. This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."). If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 671-72 (9th Cir. 2012) (quotation and citation omitted).  That is, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan*, 246 F.3d at 1208.

Here, although the ALJ found that the medical evidence confirmed the existence of medically determinable impairments, the ALJ declined to credit Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms.  Tr. 21.  Because there is no evidence of malingering in this case, the Court must determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony as to the limiting effects of her symptoms.  *Chaudhry*, 688 F.3d at 672.

At the outset, the ALJ found that Plaintiff's symptoms of her bipolar I disorder are under control and have improved with treatment. Tr. 22.  In making this finding, the ALJ extensively detailed and cited Plaintiff's treatment records, spanning from 2009 through 2013, demonstrating that Plaintiff's mental functioning stabilized on a medication regimen with treatment.  *See* Tr. 303 (Plaintiff "is learning how it feels to be emotionally in control" and "may require less medication."); Trs. 297-311, 313-316, 319, 322 (showing Plaintiff's "mental status examination is within normal limits with the exception on March 1, 2010

1   when she was having difficulty with her son and when there is question regarding

2   her use of her medications."); Tr. 22 (various "progress notes dated January 27,

3   2013 through January 31, 2014 again show nominal mental status examinations");

4   Trs. 370, 372, 380, 382, 385, 395, 398 (noting that Plaintiff is doing well and/or

5   stable); Tr. 331 (stating physical examinations are essentially unremarkable); Tr.

6   319 (noting symptoms appear under control); Tr. 317 (noting struggles with

7   symptoms when not on her medications); Tr. 315 (stating that medications are

8   working well to manage Plaintiff's mood).

9       Moreover, the ALJ found that Plaintiff is affected by situational stressors,

10  but "not those connect[ed] to basic work activities." *See* Tr. 22 (noting stress

11  related to Plaintiff's inability to continue seeing counselor due to outstanding high

12  bill, her husband's condition and worsened irritability while off his

13  antidepressants); Tr. 312 (referencing stress related to son's negative behavior); Tr.

14  371 (noting stress related to Plaintiff quitting her job due to poor staffing and her

15  negative boss).

16      Although Plaintiff faults the ALJ for not finding that her symptoms occurred

17  frequently enough to prevent gainful employment, the Court finds that Plaintiff has

18  failed to demonstrate that the records relied on by the ALJ do not constitute

19  sufficient evidence of stability, improvement, and a trend showing that her bipolar

20  I disorder is under control. Tr. 22; *see Garrison* 759 F.3d at 1018 ("While ALJs

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26

obviously must rely on examples to show why they do not believe that a claimant

is credible, the data points they choose must *in fact* constitute examples of a

broader development to satisfy the applicable 'clear and convincing' standard.").

Because the Court finds that the cited records demonstrate examples of a broader

development, the ALJ provided clear and convincing reasons for discounting

Plaintiff's credibility.

Second, the ALJ concluded that there is an indication of a motivation for

secondary gain.  Tr. 22. The ALJ reasoned that Plaintiff reported receiving her

third social security denial to Nurse Dobaj, conveying that she "needs to show that

things have changed since her denial" and that she planned to report increases in

Wellbutrin, her poor performance accomplishing chores, and her "inability to

manage the stress of working at the yogurt shop as evidence she cannot work in

stressful environments." Trs. 22, 379.  The ALJ reasoned that Plaintiff's medical

provider, Nurse Dobaj, reported that Plaintiff is "focused on obtaining SSI citing

her issues with a recent job trial" where Plaintiff was terminated for lacking

reliable internet.  Trs. 22, 381.  Nurse Dobaj also "discussed finding a job that will

not incite her depression and anxiety." Trs. 22, 382.

Based on these findings, the ALJ concluded that Plaintiff's "subjective

allegations set forth in conjunction with her attempt to establish entitlement to

supplemental security income disability payments must be viewed with caution

due to the potential for influence from motivation for secondary gain." Tr. 22.

The Court agrees and finds that the ALJ's inference regarding Plaintiff's indication

of a motivation for secondary gain was reasonable based on the record. *See Sample*

*v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982) (citation omitted) (stating that in

reaching findings the ALJ "is entitled to draw inferences logically flowing from

the evidence").

Finally, the ALJ found that Plaintiff described "daily activities that are not

limited to the extent one would expect, given the complaints of disabling

symptoms and limitations." Tr. 22. Evidence about daily activities is properly

considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989). In evaluating credibility, an ALJ may properly consider

"whether the claimant engages in daily activities inconsistent with the alleged

symptoms." *Molina*, 674 F.3d at 1113 (quoting *Lingenfelter v. Astrue*, 504 F.3d

1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the

extent that they contradict claims of a totally debilitating impairment." *Id.*

The ALJ cited several activities inconsistent with Plaintiff's claimed severe

bipolar I disorder limitation. The ALJ observed that Plaintiff "paints on canvas,

draws, plays the ukulele, or gets on Facebook" and "will jump on her [mini]

trampoline or watch movies with her husband" at home. Tr. 22  The ALJ also

observed that Plaintiff is capable of performing work at home such as easy meal preparation, some dishes, laundry, and online shopping. Trs. 14, 18, 22. Plaintiff is also able to take care of personal needs, grooming, and manages her own medications. Trs. 14, 18. The ALJ also noted that Plaintiff "spends about 2 to 4 hours doing EFT tapping for a Get Slim program" and shops with her husband for 1 to 2 hours. Tr. 22. In addition, the ALJ reasoned that "despite the allegations of symptoms and limitations preventing all work, the record reflects [Plaintiff] is able to go on vacations and pursue other activities," citing trips to Las Vegas, Chelan, and the beach; hosting a "passion part[y];" and taking an eight week course on building her business. Tr. 22.

The Court finds that this is entirely inconsistent with Plaintiff's claim in her initial disability application that she became unable to work because of her disabling condition on December 1, 2008 due to her bipolar disorder. Tr. 126-12. The ALJ did not err in concluding these activities demonstrate greater daily living abilities than the severe limitations claimed by Plaintiff. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*,

674 F.3d at 1112-13 (internal quotation marks and citations omitted).  Therefore, the ALJ provided yet another permissible reason to discredit Plaintiff's testimony.

Despite Plaintiff's arguments to the contrary, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony. As a result, the Court does not find that the ALJ has committed reversible error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 15) is

   **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** September 28, 2016.



                    THOMAS O. RICE
              Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30